UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RYAN HALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 3:11-CV-571 |
| ) | (VARLAN/SHIRLEY) |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment, Memorandum in Support, and Response [Docs. 12, 13, 16] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 14, 15]. Plaintiff Ryan Hall seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On July 10, 2009, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began February 20, 2009. [Tr. 114]. After his application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On November 17, 2010, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 23-38]. On December 13, 2010, the ALJ found that the Plaintiff was not disabled. [Tr. 17]. The Appeals Council denied

the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.

2. The claimant has not engaged in substantial gainful activity since February 20, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment[s]: degenerative disc disease, history of back surgery, and back pain (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with the ability to frequently climb, balance, stoop, kneel, crouch, or crawl consistent with Exhibit 12F.

6. The claimant is capable of performing past relevant work as a houseman and security guard. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 20, 2009, through the date of this decision (20 CFR 404.1520(f)).

[Tr. 12-17].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

3

> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol.

4

Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV. POSITIONS OF THE PARTIES**

The Plaintiff argues that the ALJ erred in finding that the Plaintiff is capable of performing past relevant work as a houseman and security guard and that, therefore, the Plaintiff is not disabled. The Plaintiff argues that the ALJ: failed to consider whether the Plaintiff met Listing 12.05C; improperly rejected evidence of Plaintiff's mental impairments; and failed to properly incorporate the Plaintiff's mental restrictions into the residual functional capacity determination. [Doc. 13 at 6-17].

The Commissioner maintains that the Plaintiff has failed to prove that he is disabled, and the Plaintiff's arguments do not undermine the ALJ's finding. The Commissioner argues: the ALJ considered whether the Plaintiff had an impairment; substantial evidence supports the ALJ's decision to reject the Plaintiff's IQ scores; and the ALJ did not commit reversible error. [Doc. 15 at 4-17].

The Plaintiff has filed a response to the Commissioner's position reiterating his position, [Doc. 16], which the Court has also considered.

## V. ANALYSIS

The Court has considered the parties' positions and finds as follows.

### A. Issues Presented to ALJ

Initially, the Court will address an issue not raised by either party. The Plaintiff's brief and allegations of error focus entirely on the ALJ's alleged failure to address the Plaintiff's mental impairments. The present focus on mental impairments borders on being an improper presentation of an issue for the first time on appeal.

On November 17, 2010, the Plaintiff appeared before the ALJ, with counsel. At that time, the ALJ asked counsel for the Plaintiff if he intended to present an opening statement. Counsel declined stating he had nothing to add to what he had submitted in his brief. [Tr. 27]. Counsel examined his client, and asked "Mr. Hall, what happened that stopped you from being able to continue working?" [Tr. 27]. The Plaintiff responded, "I had a back injury in '07 where I went to have surgery done." [Tr. 28]. Counsel continued this line of questioning, and then asked the Plaintiff how far he went in school and whether he graduated from high school. [Tr. 29]. His examination concluded by asking if the Plaintiff left school because he was having trouble with school, to which the Plaintiff responded, "yes." [Tr. 30].

Thereafter, the ALJ asked questions about the Plaintiff's daily activities. The ALJ then took testimony from the vocational expert. The hypotheticals presented by the ALJ recognized that the Plaintiff possessed only a tenth-grade education, but they did not mention any mental impairments or mental retardation. [Tr. 35-37]. The ALJ afforded counsel for the Plaintiff an opportunity to pose his own hypotheticals to the vocational expert or to make any additional arguments he felt were appropriate. [Tr. 37]. Counsel for the Plaintiff declined. [Tr. 37].

Contrasting the Plaintiff's brief on appeal with the testimony from the hearing before the ALJ, one cannot help but ask where all of the argument about mental conditions was when the Plaintiff appeared before the ALJ. It appears that neither party has addressed this issue because the Plaintiff does, in fact, raise the issue of Listing 12.05C and mental impairments in the Pre-Hearing Memorandum, which was composed and/or submitted one day prior to the hearing. [Tr. 173].

The Court of Appeals for the Sixth Circuit has found that if a claimant does not assert a disability claim under a listing to the ALJ, the claimant is not entitled to an award of benefits under that listing. See Walker v. Barnhart, 72 Fed. App'x 355, 357 (6th Cir. 2003). Because the Plaintiff's Pre-Hearing Memorandum mentions Listing 12.05C and mental impairments, the Plaintiff in this case is not precluded from an award of benefits based upon his failure to raise the issue at the hearing before the ALJ. Nonetheless, the undersigned would note that emphasizing a single condition at the hearing before the ALJ only to present an entirely different impairment to the District Court on appeal undermines the restricted scope of appeals and prevents meaningful review at each level.

**B.      Listing 12.05C of 20 C.F.R. 404, Subpart P, Appendix 1, Part A**

The Plaintiff argues that his high school intelligence test scores suggest that he meets Listing 12.05C of the 20 C.F.R. 404, Subpart P, Appendix 1, Part A. The Plaintiff argues that the ALJ did not consider Listing 12.05C, and the case should be remanded for consideration of Listing 12.05 or an award of benefits. [Doc. 13 at 6].

The Commissioner acknowledges that, as part of the sequential evaluation process, the ALJ must determine if a claimant has an impairment or combination of impairments that equals an impairment described in the Listing of Impairments. [Doc. 15 at 4]. The Commissioner

8

maintains that in this case the ALJ reviewed the medical evidence and determined that the Plaintiff did not have an impairment that met or equaled a listed impairment. [Doc. 15 at 5]. The Commissioner concedes that the ALJ did not specifically mention Listing 12.05C in his determination, but the Commissioner argues that this omission does not mean that the ALJ did not consider Listing 12.05C. [Doc. 15 at 6].

Listing 12.05C provides in relevant part:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> > C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Normally, a claimant can establish disability by demonstrating all of the medical findings listed for an impairment. 20 C.F.R. § 404.1525(c)(3). "If a claimant does not have one of the findings, however, [he or] she can present evidence of some medical equivalent to that finding." Bailey v. Comm. Soc. Sec., No. 09-6389 (6th Cir. Mar. 11, 2011) (citing §§ 404.1525 & 404.1526). To demonstrate such a medical equivalent, the claimant must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in original).

Thus, to be disabled under Listing 12.05C, the Plaintiff must establish that: (1) his valid verbal, performance, or full scale IQ score was between 60 and 70; (2) he had significantly

9

subavarage general intellectual functioning with deficits in adaptive functioning, which manifested prior to age 22; and (3) he has a mental or physical impairment imposing an additional and significant work-related limitation.

In arguing that he satisfies Listing 12.05C, the Plaintiff directs the Court to a Summary of Psychoeducational Evaluation, performed for the Cocke County School System, when the Plaintiff was fifteen-years old. [Tr. 176-79]. In the Evaluation, the Plaintiff scored a verbal IQ of 69, a performance IQ of 80, and a full scale IQ of 72. Sidney Hall, the psychological examiner completing the Evaluation, explained:

> When responding to the WISC-R, he often puffed and blew. Often he mixed up categories and facts. Signs were that he really like[d] any individual attention. He was easily frustrated. He much preferred the nonverbal rather than the verbal tasks. Ryan didn't always try to use his full potential and did only enough to be acceptable. He didn't like to concentrate and tuned out much that he heard. His thought processes were not exact and he quickly said, "I don't know."

[Tr. 177]. Mr. Hall recommended that the Plaintiff continue in special education classes. [Tr. 179].

On April 1, 2010, Alice K. Garland, M.S., performed a psychological examination of the Plaintiff. Ms. Garland described the examination by explaining:

> The raw score of 171 is considerably above the cut off of greater than 76 indicating that there was some exaggeration of symptoms on this testing. The SIRS is a test to help determine if there is over reporting of symptoms. The client had elevated skills on rare symptoms, unusual symptom combinations, both latent and subtle symptoms. He also gave a wide variety of symptoms associated with psychiatric problems as well as endorsing significant severity of problems. The client also was overly specific in symptom presentation and he was inconsistent in symptom reporting. Therefore testing today indicates on the SIRS that there was exaggeration of symptoms of emotional problems and on the PAI the test results were thought to be invalid, etiology unknown, but

> the examiner did note the client did not take long to finish the test and had initially asked the examiner when presented the test if he had to do all of the test items.

[Tr. 338].

At step three of the sequential process, the ALJ did not mention or discuss Listing 12.05C. He instead discussed Listing 1.04, which addresses disorders of the spine. [Tr. 14].

At step four, the ALJ considered both the examination from Cocke County Schools and the examination performed by Ms. Garland. He explained:

> The undersigned has considered the claimant's school records, the claimant's work history, and the consultative psychological evaluation by Alice K. Garland, a licensed senior psychological examiner. In a summary of psycho-educational evaluation from Cocke County School System, the claimant was evaluated to determine whether he was eligible to receive special education. The examiner noted that the claimant did not always try to use his full potential and did only enough to be acceptable. Since the claimant did not put forth good effort, his IQ scores are not valid. Moreover, the claimant has past relevant work as a security guard supervisor, which is not consistent with borderline intellectual functioning. In the evaluation by Ms. Garland, the claimant indicated he went to the 10th grade and had some special education classes.

[Tr. 15]. The ALJ also considered the fact that the raw score in Ms. Garland's evaluation was considerably above 171, along with her notes about rare and unusual symptoms. [Tr. 16].

The undersigned has previously held that, where the record contained IQ scores under 70, an ALJ was required to expressly analyze Plaintiff's impairments under § 12.05(C). Isham v. Astrue, 2010 WL 1957362, *6 (E.D. Tenn. 2010). However, Magistrate Judge Susan Lee of the Eastern District of Tennessee recently considered whether such scores require analysis in all cases. In light of Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), Judge Lee concluded that "an IQ score of 70 or less may not always raise a substantial question as to whether a claimant is

11

mentally retarded" and may not always require explicit discussion. McClellan v. Astrue, 804 F. Supp. 2d 678, 691 (E.D. Tenn. 2011). Judge Lee found that a court should consider "whether there was a 'substantial question' regarding whether Plaintiff met listing 12.05C" in determining if remand was appropriate. Id. at 692. The undersigned finds that such an approach is well-reasoned.

In this case, the Court finds there was a substantial question regarding whether Plaintiff met Listing 12.05C.[1] The Plaintiff has obviously met the first of the 12.05C criterion through his verbal IQ score of 69. In addition, the record establishes and the ALJ has found that the Plaintiff has severe impairments – including degenerative disc disease, history of back surgery, and back pain – which inhibit his ability to work. Based on the evidence of physical limitations and these findings, the Court finds that the third criterion – that is, physical impairment imposing an additional and significant work-related limitation – is fulfilled. Thus, the Court must consider whether the Plaintiff has demonstrated subaverage general intellectual functioning that would fulfill the second criterion.

The Plaintiff attempts to boot-strap his IQ score into a finding of significantly subaverage general intellectual functioning with deficits in adaptive functioning by stating in his brief that he has shown such subaverage functioning "by virtue of his verbal IQ of 69." [Doc. 13 at 8]. The Court is not convinced that such double usage of the IQ score is sufficient. See Turner v. Comm'r of Social Sec., 381 Fed. App'x 488, 492 (6th Cir. 2010). Nonetheless, the Court finds that there is evidence in the record on which to base a finding that the Plaintiff demonstrated significantly subaverage general intellectual functioning with deficits in adaptive functioning

---

[1] Albeit that in some large measure the lack of consideration by the ALJ resulted from the failure of the Plaintiff's attorney to raise the issue.

prior to age twenty-two years. Specifically, Sidney Hall's finding that the Plaintiff's individual achievement tests scores all fell at or below the first percentile and the Plaintiff's academic performance may fulfill the intellectual functioning criterion. Therefore, the undersigned finds that there is a substantial question as to whether the Plaintiff fulfilled Listing 12.05C, and remand is appropriate

The Plaintiff's allegation that the ALJ erred by not considering Listing 12.05C is well-taken, and the undersigned will recommend that this case be remanded to the Commissioner for analysis of Listing 12.05C. The Court will not order the Commissioner to obtain an additional psychological examination, because the determination of whether the Plaintiff demonstrated the intellectual functioning criterion before age twenty-two is unlikely to be aided by new tests. The Commissioner or the Plaintiff, however, may order whatever tests they feel are appropriate to facilitate swift disposition of this matter.

**C.  Mental Test Scores**

Plaintiff also argues that the ALJ erred in rejecting the IQ scores contained in the psychoeducational evaluation from Cocke County School System. [Doc. 13 at 10]. The Commissioner responds by stating that the ALJ is required to interpret school records. The Defendant cites the Court to Courter v. Commissioner of Social Security, No. 10-6119, 2012 WL 1592750, at *8 (6th Cir. May 7, 2012), in which the Court of Appeals explained, "the ALJ is actually *required* to analyze the non-medical evidence presented to him and to decide whether that evidence qualifies the claimant as disabled."

In this case, the ALJ did not analyze the scores from the psychoeducational evaluation. He instead rejected them as clinically invalid by stating, "The examiner noted that the claimant did not always try to use his full potential and did only enough to be acceptable. Since the

13

claimant did not put forth good effort, his IQ scores are not valid." Such outright rejection is not analysis of the non-medical evidence or a weighing of the value of the scores against other evidence. It is, instead, an insertion of the ALJ's determination that the scores were invalid where the examiner had made no such determination.

In considering Listing 12.05C on remand, the ALJ must analyze the non-medical evidence, including the contents of the psychoeducational evaluation, to determine what weight, if any, these findings are entitled to when weighed against the other evidence in the record. While the ALJ may find that the lack of effort and exaggeration in the evaluation affected the results, the ALJ must still conduct the appropriate evaluation to explain whatever decision is made and the basis for the decision.

**D.      Incorporation of Mental Restrictions into Residual Functional Capacity**

Finally, the Plaintiff argues that the record contained sufficient evidence to determine that the Plaintiff's intelligence is below normal and possibly low enough to meet 12.05C. Because the Court will recommend that this case be remanded for analysis and application of Listing 12.05C, the Court finds that this allegation of error is moot. The Court will recommend affording the Plaintiff the relief he seeks, and accordingly, additional analysis of this argument is not required.

## VI. CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 12]** be **GRANTED** and that the Commissioner's Motion for Summary Judgment **[Doc. 14]** be **DENIED**. The undersigned **RECOMMENDS** that this case be **REMANDED** to the Commissioner for analysis and application of Listing 12.05C in a manner consistent with this opinion.

                                                  Respectfully submitted,

                                                  s/ C. Clifford Shirley, Jr.
                                                  United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).